UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DARRELL D. BOETTCHER,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

    Defendant.

CASE NO. 11cv5228-BHS-JRC

REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT

Noting Date: April 6, 2012

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed. (See ECF Nos. 18, 23, 24).

Based on the relevant record, the undersigned concludes that the ALJ failed to evaluate properly plaintiff's credibility. The ALJ erroneously relied on plaintiff's lack of treatment, without consideration of plaintiff's poverty as a potential justification. The

ALJ also relied on limited activities of daily living without finding that such activities contradicted plaintiff's other testimony or were transferable to a work setting. In addition, the ALJ failed to give specific and legitimate reasons for his failure to credit the opinion of an examining doctor who opined that plaintiff was more limited in his ability to function than was found by the ALJ when determining plaintiff's residual functional capacity. Therefore, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

## BACKGROUND

Plaintiff, DARRELL D. BOETTCHER, was forty-eight years old on his application date of November 15, 2006 (Tr. 37, 277). At the time of his hearing, he had not worked since 1996, despite having consistent significant earnings between 1989 and 1994 (see Tr. 17, 120).

Plaintiff testified that he experienced a stroke after surgery on his neck in March, 2000 (Tr. 14-15). He testified to subsequent pain in his right arm, where his "hand would go numb and the whole arm just hurt from the neck all the way down the shoulder, all the way down to the fingertips" (Tr. 16). In 2000, he had a second surgery on his neck (id.).

Plaintiff also testified that he suffered from low back pain (Tr. 17-18). Plaintiff testified that he did not have any income or medical insurance, but started receiving medical care in 2009 through a poverty program (see Tr. 19-20). As found by the ALJ, plaintiff suffered from severe impairments of: "1) cervical syndrome, status post C5/C6/C7 fusion, with second surgery 2) Depressive disorder NOS" (Tr. 37).

## PROCEDURAL HISTORY

Plaintiff filed an application for Title XVI Supplemental Security Income on November 15, 2006 (Tr. 35, 43). His claim was denied initially and following reconsideration (Tr. 44-47, 54-55). Plaintiff also filed an application for Title II Disability Insurance Benefits, although plaintiff does not appear to have received formal notification of the denial of his Title II application (see Opening Brief, ECF No. 19, p. 1 n. 1; Tr. 12). Plaintiff's requested hearing was held before Administrative Law Judge Mark R. Dawson ("the ALJ") on October 08, 2009 (Tr. 10-26, 64). On October 27, 2009, the ALJ issued a written decision in which he found that plaintiff was not disabled pursuant to the Social Security Act (Tr. 32-43).

On February 18, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-5). See 20 C.F.R. § 404.981. On March 23, 2011, plaintiff filed a complaint in this Court, seeking judicial review of the ALJ's final decision (see ECF No. 1). On June 28, 2011, defendant filed the sealed administrative record regarding this matter ("Tr.") (see ECF No. 9).

In his Opening Brief, plaintiff requests a reversal and remand of the ALJ's decision on the following bases: (1) the ALJ failed to provide clear and convincing reasons to support his failure to credit fully plaintiff's testimony; (2) the ALJ failed to provide specific and legitimate reasons for his failure to credit fully medical opinions by examining and treating doctors; and (3) the ALJ did not evaluate properly whether or not plaintiff could perform past relevant work (see ECF No. 19, p. 2).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports

the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (1996) (per curiam) (*quoting* Andrews, supra, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of SSA, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (other citation omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." Stout, supra, 454 F.3d at 1054 (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion. Stout, supra, 454 F.3d at 1054-55 (reviewing legal errors found to be harmless).

# DISCUSSION

1. <u>The ALJ did not evaluate properly plaintiff's testimony</u>.

The ALJ's credibility determinations "must be supported by specific, cogent reasons." <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" <u>Greger v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting* <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999)); <u>Reddick</u>, <u>supra</u>, 157 F.3d at 722 (citations omitted); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." <u>Smolen</u>, <u>supra</u>, 80 F.3d at 1284.

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; <u>Smolen</u>, 80 F.3d at 1281 (*citing* <u>Cotton v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); <u>Smolen</u>, <u>supra</u>, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical

evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing* Cotton, 799 F.2d at 1407). Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, supra, 80 F.3d at 1283-84; Reddick, supra, 157 F.3d at 722 (*citing* Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996); Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (Tr. 39).

The ALJ failed to credit fully plaintiff's testimony in part because of a finding that plaintiff had "no recent physical care and is not currently taking any prescribed medications" (Tr. 39). The ALJ continued, noting that although plaintiff reported low back pain, he "had no treatment" (id.). The ALJ noted that plaintiff took aspirin and muscle relaxers for pain, and found that if "the claimant's impairments caused so much pain, he would likely seek medical attention and request a stronger kind pain relief (sic)" (id.). According to the ALJ, this factor "strongly suggests the claimant's impairments may not be as debilitating as he alleges" (Tr. 39).

The ALJ also included the following regarding plaintiff's credibility: "Linnea Madison, MD stated that: 'The claimant's presentation has been inconsistent and his symptoms appear exaggerated for somebody who doesn't take any medication to treat his

pain. Claimant is rated as not fully credible and should have the capacity for light duty work'" (Tr. 40).

There are a number of problems with the ALJ's reliance here. First, the Court notes that the quoted report was an assessment from a non-examining source who solely reviewed some of plaintiff's records. Second, it appears that the ALJ considered this opinion to be one by a physician, when, in fact, it appears to be a lay opinion (see Tr. 40, 254). In addition, the ALJ appears to repeat and rely on a misstatement of the record. The ALJ implies here that plaintiff did not take any medication for pain and elsewhere that he took only aspirin and muscle relaxers, however, the record includes plaintiff's testimony that he had been given pain relievers and the record also contains a medication list for plaintiff that includes hydrocodone-acetaminophen, (e.g., Vicodin), for pain relief (see Tr. 22, 39, 40).

In addition, according to Social Security Ruling, (hereinafter "SSR"), SSR 96-7, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7 1996 SSR LEXIS 4, at *22. However, the ALJ failed to take into consideration plaintiff's alleged poverty before drawing inferences about plaintiff's symptoms and their functional effects from plaintiff's failure to pursue regular medical treatment, thereby committing error. See id.

As already discussed, see supra, BACKGROUND, plaintiff testified that he did not have any income or medical insurance, but started receiving medical care in 2009 through a poverty program (see Tr. 19-20). The medical record also supports plaintiff's assertion, indicating that plaintiff was unable to seek further medical treatment, against the doctor's recommendation, due to lack of insurance (see Tr. 242). Although the ALJ mentioned this treatment record, he failed to note explicitly plaintiff's reasons for his failure to seek further medical treatment (see Tr. 42).

The ALJ should have considered plaintiff's testimony regarding his inability to pay for medical care before finding that plaintiff's impairments were not as debilitating as alleged (see Tr. 39). As there is no evidence that the ALJ considered this reason, the Court cannot find that the ALJ complied with the relevant Regulation. See SSR 96-7 1996 SSR LEXIS 4, at *22.

When confronted with a similar issue, the Ninth Circuit indicated that although it had held "that 'an unexplained, or inadequately explained failure to seek treatment can cast doubt on the sincerity of a claimant's pain testimony,' we have proscribed the rejection of a claimant's complaint for lack of treatment when the record establishes that the claimant could not afford it." Regennitter v. Comm'r SSA, 166 F.3d 1294, 1296 (9th Cir. 1999) (citations, ellipses and brackets omitted).

The ALJ also failed to credit fully plaintiff's testimony due to plaintiff's activities of daily living (Tr. 40). The ALJ noted the following activities of daily living: "the claimant testified that he puts around the house, tries to maintain the property, trims the shrubs, makes walking sticks and watches TV, and that his wife does the housework" (Tr.

39, 40). The ALJ further indicated that it appeared that "pain does not limit the claimant from doing these types of activities" (Tr. 40). The ALJ continued:

> Although the claimant described fairly limited activities, two factors weigh against considering these allegations to be strong evidence supporting a finding that the claimant is disabled. First the allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainly. Second, even if the claimant's daily activities are as truly limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

(Tr. 40).

The first reason given by the ALJ in support of his failure to credit fully plaintiff's testimony regarding daily activities is that "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty" (id.)

The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way detract from h[is] credibility as to h[is] overall disability." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007 (*quoting* Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination:" (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." Orn, supra, 495 F.3d at 639 (*citing* Fair, supra, 885 F.2d at 603). As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities

warrant an adverse credibility determination. Orn, supra, 495 F.3d at 639 (*quoting* Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)). A general finding that a claimant's activities of daily living are inconsistent with the fact that the claimant filed an application for benefits is not sufficient. See Orn, supra, 495 F.3d at 639.

Here, the ALJ did not make a specific finding of transferability of plaintiff's activities of daily living to a work setting, in fact he found them to be "fairly limited" (see Tr. 40). See Orn, supra, 495 F.3d at 639. The ALJ also did not find that plaintiff's activities of daily living contradicted other specific testimony of plaintiff. As a result, the ALJ's discussion of plaintiff's activities of daily living provides no support for his adverse credibility finding. See Orn, supra, 495 F.3d at 639.

The second reason given by the ALJ was that "it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision" (Tr. 40) First, the Court notes that the ALJ does not specify what "other reasons" to which one can attribute the degree of limitation plaintiff alleges that he suffers. Attributing the degree of limitation plaintiff alleges to "other reasons," when those "other reasons" are not specified, provides no support for the ALJ's adverse credibility finding. The ALJ must at least provide specific reasons to discount a claimant's testimony. See Reddick, supra, 157 F.3d at 722.

Similarly, the "other factors discussed in this decision" cannot support an adverse credibility finding as they also are unspecified. The Court also notes, but does not rely on, the fact that this identical set of reasons has been utilized to find a different claimant less

than fully credible, a fact not supportive of a finding that these reasons are specific to plaintiff here. See Duran v. Astrue, 2011 U.S. Dist. LEXIS 38041 at *40-*43 (W.D. Wash. March 29, 2011) (unpublished opinion) (Case No. 3:10cv5092-JRC, Dock. ECF No. 38, pp. 24-25). The ALJ's finding that plaintiff's activities of daily living were "outweighed" by "other factors" that were not specified also was not proper. See Orn, supra, 495 F.3d at 639.

For the reasons discussed and based on the relevant record, the Court concludes that the ALJ erred in his review of plaintiff's testimony and that the ALJ's findings regarding plaintiff's credibility are not supported by substantial evidence in the record. Therefore, this matter should be reversed and remanded to the Commissioner for further consideration.

2. The ALJ failed to provide specific and legitimate reasons for his failure to credit fully a medical opinion by an examining physician.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (*citing* Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, supra, 157 F.3d at 725 (*citing* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725 (*citing* Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." Id. (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, supra, 81 F.3d at 830 (citations omitted); see also 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. Lester, supra, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan, supra, 242 F.3d at 1149 (*citing* Magallanes, supra, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." Van Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* Lester, supra, 81 F.3d at 831); see also 20 C.F.R. § 404.1527(d)(2)(i) (when considering medical

opinion evidence, the Commissioner will consider the length and extent of the treatment relationship).

   a. Dr. Timothy Fernstrom, D.O. ("Dr. Fernstrom")

Dr. Fernstrom is an acceptable medical source, see 20 C.F.R. § 404.1513 (a)(1), who examined plaintiff on February 12, 2007(Tr. 208-12). He observed that plaintiff moved with difficulty from the waiting room to the examination room and that he had difficulty getting on the examination table (Tr. 209). Dr. Fernstrom added that several times he was concerned that plaintiff "may actually fall" (id.). He observed "small myoclonic jerks throughout the exam" (id.). Following sensory examination, Dr. Fernstrom observed that plaintiff had "decreased two-point discrimination, [and] decreased light touch in bilateral hands throughout all dermatomes" (Tr. 211). Dr. Fenstrom diagnosed plaintiff with neck pain, low back pain, depression and high blood pressure (Tr. 211).

The ALJ considered Dr. Fernstrom's opinion, although he referred to Dr. Fernstrom as Kareem Hinedi, M.D. (see Tr. 42 (*citing* Exhibit 5F, i.e., 206-12)). The ALJ noted that Dr. Fernstrom opined that plaintiff suffered from limitations greater than those assigned by the ALJ (Tr. 42). The ALJ set out some of the objective bases underlying Dr. Fenstrom's opinions regarding plaintiff's specific functional limitations (id.). However, the ALJ gave "limited weight" to Dr. Fernstrom's opinions as the ALJ found that they were not consistent with "the claimant's testimony, the state agency examination or with the medical evidence of record" (id.).

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 14

Because Dr. Fernstrom was an examining doctor, his opinions could be rejected by the ALJ only "for specific and legitimate reasons that are supported by substantial evidence in the record." See Lester, supra, 81 F.3d at 830-31. The ALJ found that Dr. Fernstrom's opinion was inconsistent with plaintiff's testimony, yet failed to indicate a single statement in plaintiff's testimony that was not consistent with any particular opinion from Dr. Fernstrom (Tr. 42). This is not a specific and legitimate reason, and, particularly where the Court has found that the ALJ failed to evaluate properly plaintiff's testimony, see supra, section 1, it fails to provide support for the ALJ's failure to credit fully Dr. Fernstrom's opinions regarding plaintiff's functional limitations. See Lester, supra, 81 F.3d at 830-31.

The ALJ also found that Dr. Fernstrom's opinions were not consistent with "the state agency examination." However, as Dr. Fernstrom was an examining doctor who examined plaintiff at the request of the state agency, and as the state agency physical assessment was completed by a non-doctor who did not perform an examination, it is unclear what "state agency examination" the ALJ refers to here (see Tr. 42). In addition, the ALJ fails to specify which aspect of Dr. Fernstrom's opinion was inconsistent with which aspect of the unspecified "state agency examination" (id.).

Lastly, the ALJ found that Dr. Fernstrom's opinions were inconsistent "with the medical evidence of record" (Tr. 42). Again, the ALJ fails to specify which aspect of the "medical evidence of record" is relied on by the ALJ as inconsistent with which aspect of Dr. Fernstrom's opinion.

For the stated reasons, the Court concludes that the ALJ failed to provide "specific and legitimate reasons that are supported by substantial evidence in the record" for his failure to credit fully the opinions of Dr. Fernstrom. See Lester, supra, 81 F.3d at 830-31. As the ALJ indicated, Dr. Fernstrom, an examining doctor, opined that plaintiff suffered from more limited functional abilities than allowed for in the ALJ's written decision regarding plaintiff's residual functional capacity (see Tr. 42). For the reasons stated and based on the relevant record, the Court finds this to be an independent reason that this matter should be reversed and remanded.

    b.  Dr. Todd D.L. Woods, M.D. ("Dr. Woods")

The ALJ relied on the opinion from Dr. Woods "to show the patient's subjective complaints were at odds with Dr. Woods' objective findings" (Tr. 42). However, it is not clear from the record that such reliance by the ALJ was proper. The treatment records of Dr. Woods do not appear to support the ALJ's finding that plaintiff apparently was exaggerating his symptoms (see Tr. 42). As the cited aspects of Dr. Woods' treatment records do not lead logically to the inferences made by the ALJ, the Court is unable to conclude that the ALJ's findings regarding the opinions of Dr. Woods are supported by substantial evidence in the record as a whole. See Magallanes, supra, 881 F.2d at 750. For this reason and because the Court already has concluded that this matter should be reversed and remanded for further consideration, the opinions of Dr. Woods should be evaluated anew following remand of this matter.

3. <u>The lay evidence offered by Dr. Paul J. Philips, D.C. ("Dr. Philips") should be evaluated anew following remand of this matter</u>.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," see 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources," see 20 C.F.R. § 404.1513 (d)(4), and "other sources" such as nurse practitioners and chiropractors, who are considered other medical sources, see 20 C.F.R. § 404.1513 (d)(1). See also Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)). An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." Turner, supra, 613 F.3d at 1224 (*citing* Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)); see also Van Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

Recently, the Ninth Circuit characterized lay witness testimony as "competent evidence," again concluding that in order for such evidence to be disregarded, "the ALJ must provide 'reasons that are germane to each witness.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting* Van Nguyen, supra, 100 F.3d at 1467). In this recent Ninth Circuit case, the court noted that an ALJ may not discredit "lay testimony as not supported by medical evidence in the record." Bruce, supra, 557 F.3d at 1116 (*citing* Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996)). In addition, "where the ALJ's

error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, supra, 454 F.3d at 1056 (reviewing cases).

Dr. Philips was plaintiff's treating chiropractor from October, 2005 until March, 2006 (see Tr. 170-78, 204-05). In this capacity, Dr. Philips examined plaintiff on a number of occasions and made many objective observations of plaintiff, including moderately restricted range of motion in the cervical and thoracolumbar regions with pain, on October 31, 2005 (Tr. 170-71); as well as severe restricted range of motion in the cervical and thoracolumbar regions with pain on January 9, 2006 (Tr. 174-76); on January 25, 2006 (Tr. 178); on January 31, 2006 (id.). Dr. Philips also observed reduced range of motion in the cervical and lumbar regions, inflammation in the lower cervical spine, as well as in the thoracic region, and the lumbosacral region, on March 31, 2006 (Tr. 205).

The ALJ gave little weight to the opinions of Dr. Philips in part due to the finding that Dr. Philips "offered no objective medical findings to support []his conclusion" (Tr. 40). However, the Court has just discussed some of the objective medical findings in Dr. Philips' treatment records that support Dr. Philips' opinions. The Court also notes that Dr. Philips was receiving objective medical reports from neurologist Dr. Woods, which also provide objective support for Dr. Philips' opinions (see Tr. 297 ("conclusively demonstrates objective electrophysiologic evidence" of plaintiff's progressive myelopathy), 309-11, 312-13).

The ALJ additionally found that Dr. Philips stated "that the patient's symptoms are improving favorably with each visit" (Tr. 40). However, the ALJ appears to have failed to review one of Dr. Philips treatment reports in which he indicated that although plaintiff's problem was "improving favorably" on October 31, 2005 (Tr. 172), on January 9, 2006 it had "worsened since then" (Tr. 176; see also Tr. 178). Therefore, the ALJ's characterization of Dr. Philip's treatment records as demonstrating that Dr. Philips stated "that the patient's symptoms are improving favorably with each visit" is not a finding based on substantial evidence in the record (see Tr. 40). See Magallanes, supra, 881 F.2d at 750. The ALJ also found that Dr. Philips' opinions were "old," although the ALJ does not support his reliance on this finding with a reference to any subsequent medical record that contradicts any of Dr. Philips' opinions (Tr. 40).

For the reasons discussed and based on the relevant record, the Court concludes that the opinions of Dr. Philips should be evaluated anew following remand of this matter.

4. <u>The question of whether or not plaintiff could perform past relevant work must be evaluated anew following remand</u>.

The Court already has determined that this matter should be reversed and remanded for further consideration based on the ALJ's errors in his review of plaintiff's credibility and the medical evidence, see supra, sections 1 and 2. Following remand, plaintiff should be afforded a new hearing and the ALJ should issue a new written decision. All of the five steps of the sequential disability evaluation process should be completed anew. On remand, plaintiff should receive an explicit ruling on his Title II application.

## CONCLUSION

Based on these reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on April 6, 2012, as noted in the caption.

Dated this 13th day of March, 2012.

J. Richard Creatura
United States Magistrate Judge